# In re John Campbell Realty, Inc., John Campbell, Charles Brown

[516 A.2d 138]

No. 83-629

Present: **Allen, C.J., Hill, Peck, Gibson and Hayes, JJ.**

Opinion Filed May 16, 1986

Motion to Reargue Denied August 22, 1986

*Richard E. Davis Associates, Inc.*, Barre, for Plaintiffs-Appellants.

*Jeffrey L. Amestoy*, Attorney General, and *Samuel E. Johnson*, Assistant Attorney General, Montpelier, for Defendant-Appellee.

**Peck, J.** Charles Brown (Brown), John Campbell (Campbell) and John Campbell Realty, Inc. (Campbell Realty) appeal an order of the Vermont Real Estate Commission which revoked the real estate license of Campbell Realty, and suspended the licenses of Brown and Campbell for six months and two years, respectively. The Commission found that Campbell and Brown had demonstrated untrustworthiness and bad faith in their conduct involving the sale of a farm, and imposed the sanctions pursuant to 26 V.S.A. § 2296. We affirm.

The facts of this case are complicated. The sequence of events which gave rise to this proceeding began in March of 1981 when Campbell Realty obtained a listing agreement to sell a farm in Derby, Vermont, owned by Guy and Susan Fortin. The principal

broker of Campbell Realty was Brown. Although Campbell owns Campbell Realty, he is not a broker for the corporation, but had a separate broker's license and office.

In June 1981, Gilbert and Marie Fleury and their stepson Yves Thiaux (hereinafter the Fleurys) came from France to Vermont to look for a dairy farm to buy after looking unsuccessfully for a farm in Quebec. The Fleurys speak French but not English. Although only Campbell Realty had the listing, both Campbell and Brown showed the Fortin farm to the Fleurys in June, 1981. Campbell speaks French; Brown does not. A tentative agreement was made that the Fleurys would buy the farm for $450,000, which included the real estate, the dairy herd, machinery, personal property, and a silo. The Fleurys needed to obtain visas, immigration documents, and financing, and to obtain permission from the French government to transfer funds out of France before they could definitely purchase the farm. They also needed to sell their real estate in France to obtain the necessary funds.

A sales agreement was signed on June 24, 1981, which made the sale contingent upon the Fleurys obtaining the necessary immigration documents. The sales agreement also provided for a $20,000 deposit from the buyers to be placed in an escrow account. No closing date was mentioned. During the negotiations surrounding the sale of the farm, Campbell was the primary contact for the Fleurys. He was their interpreter. He took them to Burlington to meet with an attorney to help them with the immigration papers. He invited the Fleurys to stay at his house, which they did. He translated documents for them.

Before the Fleurys returned to France, they requested several things from Campbell. They asked him to get the records of the yearly milk revenues of the farm, the ear tag numbers of the cows, the serial numbers of the equipment, and various maps of the farm. It was the Fleurys' understanding that Campbell would supply these items. Campbell assured the Fleurys that he would look after the Fortin farm while they were in France, and that the Fortins would take good care of the farm until the closing. The Fleurys then returned to France.

In August 1981, Campbell flew to France and stayed at the Fleurys' home. While in France, he assisted the Fleurys in obtaining their immigration papers and in arranging the transfer of funds to the United States. At this time, he had the Fleurys sign a second sales agreement which added the name of the Fleurys'

other son, deleted the $20,000 escrow deposit requirement and the contingency provision, and established a closing date of October 15, 1981. Both contracts were written in English.

Despite the absence of any requirement of a deposit, later in the fall of 1981, $20,000 of the Fleurys' money was transferred to the Fortins. The facts surrounding this transfer are murky, but it is undisputed that Campbell went to the Lyndonville Savings Bank, of which he is a director, and obtained a check made out to the Fortins in the amount of $20,000, which came from the Fleurys' account. This check he gave to the Fortins.

The Fleurys returned to Vermont in January 1982 and stayed at Campbell's home. In the opinion of the Fleurys, the condition of the farm had deteriorated so drastically that they wanted to reclaim the $20,000 and return to France. According to the Fleurys, they were advised by Campbell that they had to purchase the farm or they would lose up to $50,000: the $20,000 in the Fortins' possession and a $30,000 commission to Campbell. Thereafter, the price of the farm was renegotiated downward from $450,000 to $410,000; the closing occurred in February 1982.

In March 1983, a four-count complaint was filed with the Real Estate Commission (the Commission) against Brown and Campbell Realty and a seven-count complaint was filed against Campbell, individually. The Commission heard both complaints in one proceeding, made extensive findings of fact, and reached several conclusions. In essence, the Commission determined that Campbell's actions, taken as a whole, demonstrated untrustworthiness and bad faith, and that Brown, as principal broker, had the ultimate responsibility for the handling of the transaction. Therefore, the Commission held Brown responsible as well. The Commission's determination of untrustworthiness followed its conclusions that Campbell led the Fleurys to believe he was acting in their behalf, that he violated his fiduciary responsibilities, and that he failed to segregate funds in an escrow account.

The defendants first argue that in essence they were charged with fraud and therefore the applicable standard of proof should have been clear and convincing evidence. Although several of the counts against the defendants allege that Campbell demonstrated untrustworthiness by making false statements, none of the Commission's conclusions rest upon fraud or fraudulent misrepresen-

tation. The Commission determined the defendants demonstrated untrustworthiness under 26 V.S.A. § 2296(a)(3) and (a)(8).*

A second argument made by defendants is that the Commission shifted the burden of proof to the defendants because the Commission stated in several findings that it was confused or perplexed. We disagree. The statements by the Commission only demonstrate that the defendants did not introduce evidence to rebut the State's prima facie case. Furthermore, the three statements relating to confusion were completely outweighed by the remaining thirty-two findings.

The defendants then claim that the Commission made no findings that Campbell was the agent of the Fleurys, and that he did not consent to work for the Fleurys. They argue that his conduct was simply what a conscientious broker would do to promote a sale.

The Commission found that Campbell acted as the intermediary, translator, and broker of the Fleurys, and individually took control of any negotiations pertaining to the sale of the Fortin farm. It also found that Campbell cultivated the Fleurys' friendship and their reliance upon him; that the Fleurys stayed at his home; and that he stayed at their home in France. Other findings on this issue include: that Campbell indicated that he would obtain the information the Fleurys requested pertaining to the farm, that he assured the Fleurys he would look after the Fortin farm while they were gone, and that Guy Fortin would take good care of the farm. The Commission also found that Campbell assisted the Fleurys in obtaining financing and visas. In fact, it found that all the applications for financing and negotiations with respect to interest rates and other matters relating to the financing were done by Campbell on behalf of the Fleurys.

The defendants' argument appears to contest not the factual support for these findings but that these findings do not support a determination of untrustworthiness. Campbell's role in this transaction warrants further delineation. First, he did not have a written listing agreement for the Fortin farm, and therefore could not represent the Fortins or show their real estate. Vermont Real Estate Commission Rule 2.11. A real estate broker may represent the buyer, but must do so under the terms of an agency agree-

---

* 26 V.S.A. § 2296 was amended generally in 1985. These proceeding were based upon the former § 2296.

ment or authorization. *Id.* Campbell denies that he was working for the buyers and asserts that he was simply "promoting the sale." Obviously, Campbell Realty, totally owned by Campbell, stood to gain a large commission from the sale of the farm. The defendants argue that Campbell had an interest in promoting the sale because his company would gain and that he was not prohibited from assisting in the sale. But the question remains: under whose authority was he acting? A real estate broker may not advance his own interests to the detriment of the buyers. The Commission concluded that Campbell's actions in this transaction could lead an unsophisticated buyer to believe he was acting in their best interest. We agree with the Commission that Campbell's conduct demonstrated untrustworthiness in this regard. We need not decide whether Campbell was actually the agent of the Fleurys to conclude that his actions in leading the Fleurys to believe he was acting on their behalf were definitely untrustworthy under the circumstances of this case.

Another basis for the Commission's conclusion was the transfer of the $20,000 from the Fleurys to the Fortins. The appellants attack the Commission's findings relating to this issue. We note that it is well established in Vermont "that an administrative body's ruling is entitled to a strong presumption of validity. . . . We will not disturb their findings if there is any evidence in the record to support them." *In re Desautels Real Estate, Inc.*, 142 Vt. 326, 336, 457 A.2d 1361, 1366 (1982). The Commission made numerous findings as to this transaction. Specifically, it found that the second sales agreement omitted the deposit requirement; that despite the deletion, the Fleurys transferred the money as a result of suggestions, demands, or representations made by Campbell; and that the Fleurys intended the money to be kept as a deposit. The Commission also found that when the Fleurys saw the bad condition of the farm and wanted to abandon the purchase, Campbell advised them that they would lose the $20,000 transferred to the Fortins as well as a $30,000 commission to him.

Appellants attack these findings as unsupported by the evidence. However, three members of the Fleury family testified that Campbell never translated the second sales agreement, but, instead, indicated that it was basically the same as the first one with the addition of the name of the Fleurys' son. There was also testimony that, on several occasions, Campbell requested the

transfer of the $20,000. The Fleurys also testified that they intended the money to be a deposit to validate the purchase of the farm.

The credibility of witnesses is a matter for the finder of fact. *Hall* v. *Miller,* 143 Vt. 135, 145, 465 A.2d 222, 227 (1983). No error arises simply because, after hearing all the witnesses' testimony, the Commission chose to believe the Fleurys. The findings by the Commission are adequately supported by evidence in the record.

These findings support the Commission's conclusion that the defendants' conduct in light of the particular circumstances here demonstrated untrustworthiness. "We have consistently stated that, absent compelling indications of error, interpretations of statutory provisions by the administrative body responsible for their execution will be sustained on appeal." *In re Desautels, supra,* 142 Vt. at 336, 457 A.2d at 1366. Because we sustain the Commission's ruling on the grounds discussed above, we need not address the defendants' other arguments.

The Commission determined that Brown's license should be suspended. We agree. The Commission found that Brown failed to adequately supervise the conduct of Campbell and failed to insist that the $20,000 be placed in a trust account. As we have determined that the conduct of Campbell demonstrated untrustworthiness and the defendants do not challenge Brown's responsibility in the transaction, we affirm the Commission's suspension of Brown's license as well.

*Affirmed.*